1  MAUREEN BECKLEY, State Bar No. 316754
   GURINDER S. GREWAL, State Bar No. 277975
2  JEREMY P. BLUMENFELD, *pro hac vice*
   ABBEY M. GLENN, State Bar No. 267751
3  ALLISON S. EGAN, *pro hac vice*
   MORGAN, LEWIS & BOCKIUS LLP
4  One Market, Spear Street Tower
   San Francisco CA 94105-1596
5  Telephone: 415.442.1206
   Facsimile: 415.442.1001
6  Email: *maureen.beckley@morganlewis.com*
          *gurinder.grewal@morganlewis.com*
7          *jeremy.blumenfeld@morganlewis.com*
          *abbey.glenn@ morganlewis.com*
8          *allison.egan@morganlewis.com*

9  Attorneys for Defendants
   SCHENKER, INC., ET AL.

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13

14  DIEGO PARTIDA, individually and as a          Case No. 4:22−CV−09192−AMO
    representative of a putative class of
15  participants and beneficiaries, on behalf of   **DEFENDANTS' NOTICE OF MOTION**
    the Schenker, Inc. 401(k) Savings and          **AND MOTION TO DISMISS PLAINTIFF'S**
16  Investment Plan,                               **FIRST AMENDED COMPLAINT AND**
                                                   **MEMORANDUM OF POINTS &**
17                      Plaintiff,                 **AUTHORITIES IN SUPPORT**

18              v.                                  Court:      Hon. Araceli Martínez-Olguín
                                                   Location:   San Francisco Courtroom 10, 19th
19  SCHENKER, INC., ET AL.,                                    Floor
                                                   Hearing:    July 27, 2023, 2:00 p.m.
20                      Defendants.

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1
<b><u>NOTICE OF MOTION AND MOTION</u></b>

2       **PLEASE TAKE NOTICE** that on July 27, 2023 at 2:00 p.m., or as soon thereafter as the

3   matter may be heard by the Honorable Araceli Martínez-Olguín, in Courtroom 10 on the 19th

4   Floor of the Phillip Burton Federal Building & United States Courthouse, located at 450 Golden

5   Gate Avenue, San Francisco, CA, Defendants Schenker, Inc. and Administrative Committee of

6   the Schenker, Inc. 401(k) Savings and Investment Plan ("Defendants") will, and hereby do, move

7   this Court to dismiss the First Amended Complaint ("FAC") filed by Plaintiff Diego Partida

8   pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

9       The Motion is based on this Notice, the following Memorandum of Points and

10  Authorities, the exhibits submitted with the Declaration of Abbey M. Glenn in connection with

11  Defendants' Request for Judicial Notice, and any other written or oral materials as may be

12  presented before the Court takes this Motion under submission.

13      The FAC alleges that Defendants breached their fiduciary duties of prudence and loyalty

14  by offering allegedly imprudent investment options.  At the outset, Plaintiff lacks Article III

15  constitutional standing to press his claims challenging the failure to monitor specific investment

16  options in which he did not personally invest because he has not suffered an injury in fact with

17  respect to those investments.

18      Plaintiff also fails to allege facts suggesting Defendants engaged in an imprudent fiduciary

19  process.  Plaintiff's allegations that certain plan investment options performed poorly or cost too

20  much do not suffice to state a plausible claim for relief.  Moreover, the specific share classes of

21  certain funds Plaintiff prefers would have cost him and other participants more than those offered

22  by the Plan because of revenue sharing that was credited to participants.  And Plaintiff's

23  allegations regarding the fees paid to the former investment advisor warrant dismissal because

24  they lack any facts about the services provided or any benchmark for the compensation.  Nor does

25  Plaintiff state a viable claim that Defendants acted disloyally or that any Defendant failed to

26  monitor the fiduciaries appointed to administer the Plan.  For these reasons, and those explained

27  more fully in the accompanying Memorandum of Points and Authorities, Defendants request that

28  the Court grant their Motion to Dismiss.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DEFENDANTS' MOTION TO DISMISS
AND MEMORANDUM OF P&A
CASE NO.  4:22-CV-09192-AMO

**TABLE OF CONTENTS**

|  |  | **Page** |
| --- | --- | --- |
| I. | INTRODUCTION ........................................................... | 2 |
| II. | STATEMENT OF ISSUES TO BE DECIDED ..................... | 4 |
| III. | RELEVANT FACTUAL BACKGROUND ........................... | 5 |
|  | A.    KEY FEATURES OF THE PLAN ........................... | 5 |
|  | B.    PLAINTIFF'S CLAIMS ..................................... | 6 |
| IV. | ARGUMENT ................................................................. | 7 |
|  | A.    PLAINTIFF DOES NOT HAVE ARTICLE III STANDING TO ASSERT CLAIMS THAT DEFENDANTS FAILED TO MONITOR THE WELLS FARGO, JENNISON, GABELLI, AND INVESCO FUNDS .............................. | 7 |
|  | 1.    CONSTITUTIONAL STANDING LEGAL STANDARD ...................... | 7 |
|  | 2.    PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT A CLAIM THAT DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES BY FAILING TO MONITOR FUNDS IN WHICH PLAINTIFF NEVER INVESTED ................................ | 8 |
|  | B.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE ...................................... | 10 |
|  | 1.    RULE 12(B)(6) LEGAL STANDARD ................................. | 10 |
|  | 2.    PLAINTIFF'S ALLEGATIONS THAT DEFENDANTS FAILED TO MONITOR THREE FUNDS THAT PERFORMED POORLY DOES NOT STATE A CLAIM ................................. | 12 |
|  | 3.    PLAINTIFF'S ALLEGATIONS THAT DEFENDANTS BREACHED THEIR FIDUCIARY DUTY BY SELECTING THE JANUS FUND TO REPLACE THE OAKMARK FUND IN 2020 DO NOT STATE A CLAIM ................................. | 15 |
|  | 4.    PLAINTIFF'S SHARE CLASS ALLEGATIONS DO NOT STATE A CLAIM ...................................... | 16 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

DEFENDANTS' MOTION TO DISMISS
AND MEMORANDUM OF P&A
CASE NO. 4:22−CV−09192−AMO

TABLE OF CONTENTS
(continued)

Page

5.   PLAINTIFF'S CHALLENGE TO GREENLEAF'S

COMPENSATION DOES NOT STATE A PLAUSIBLE CLAIM

FOR RELIEF ........................................................................................... 19

C.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE

DUTY OF LOYALTY ............................................................................. 23

D.   PLAINTIFF'S DERIVATIVE DUTY TO MONITOR CLAIM FAILS .............. 24

E.   PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A CLAIM FOR

BREACH OF FIDUCIARY DUTY BY OMISSION ........................................ 24

V.   CONCLUSION ........................................................................................ 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

DEFENDANTS' MOTION TO DISMISS
AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4
*Akhlaghi v. Cigna Corp.*,

5
   No. 19-cv-03754-JST, 2019 WL 13067381 (N.D. Cal. Oct. 23, 2019) ................................. 25

6
*Alas v. AT&T Inc.*,

7
   No. 17-cv-08106, 2018 WL 6133648 (C.D. Cal. Oct. 29, 2018)............................................. 9

8
*Albert v. Oshkosh Corp.*,

9
   47 F.4th 570 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363

10
   (7th Cir. Sept. 21, 2022)....................................................................................... 6, 11, 14

11
*Anderson v. Intel Corp. Inv. Pol'y Comm.*,

12
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ............................................................ 13, 14, 15, 16

13
*Ashcroft v. Iqbal*,

14
   556 U.S. 662 (2009) ........................................................................................................... 10

15
*Asner v. SAG-AFTRA Health Fund*,

16
   557 F. Supp. 3d 1018 (C.D. Cal. 2021)............................................................................... 17

17
*Baker v. United States*,

18
   722 F.2d 517 (9th Cir. 1983)................................................................................................. 7

19
*Beldock v. Microsoft Corp.* ("*Beldock I*"),

20
   No. C22-1082-JLR, 2023 WL 1798171 (W.D. Wash. Feb. 7, 2023) ........................... 9, 12, 24

21
*Beldock v. Microsoft Corp.* ("*Beldock II*"),

22
   No. C22-1082JLR, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) ................... 3, 12, 15, 16

23
*In re Century Aluminum Co. Sec. Litig.*,

24
   729 F.3d 1104 (9th Cir. 2013)............................................................................................. 10

25
*Chavez v. United States*,

26
   683 F.3d 1102 (9th Cir. 2012)............................................................................................. 25

27
*Davis v. Salesforce.com, Inc.*,

28
   No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) ................................................ 3, 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO. 4:22−CV−09192−AMO

1

**TABLE OF AUTHORITIES**
(continued)

2
**Page(s)**

3  *Davis v. Washington Univ. in St. Louis*,

4      960 F.3d 478 (8th Cir. 2020)................................................................ 14

5  *Dorman v. Charles Schwab Corp.*,

6      No. 17-cv-00285-CW, 2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) ................................ 24

7  *Enos v. Adidas Am., Inc.*,

8      No. 3:19-CV-01073-YY, 2021 WL 5622121 (D. Or. Aug. 26, 2021), *R.&R.*

9      *adopted*, 2021 WL 5611481 (D. Or. Nov. 30, 2021).................................... 3, 12, 14

10  *Fifth Third Bancorp v. Dudenhoeffer*,

11      573 U.S. 409 (2014) ........................................................................ 10

12  *Forman v. TriHealth, Inc.*,

13      40 F.4th 443 (6th Cir. 2022)................................................................ 19

14  *Fritton v. Taylor Corp.*,

15      No. 22-CV-00415, 2022 WL 17584416 (D. Minn. Dec. 12, 2022)........................................ 9

16  *Glick v. ThedaCare, Inc*.,

17      No. 20-CV-1236-WCG-SCD, 2022 WL 16927749 (E.D. Wis. Oct. 27, 2022),

18      *R&R adopted*, No. 20-C-1236, 2022 WL 16924188 (E.D. Wis. Nov. 14, 2022) .................. 22

19  *Gonzalez v. Northwell Health, Inc.*,

20      --- F. Supp. 3d ----, 2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022)........................................ 18

21  *Hecker v. Deere*,

22      556 F.3d 575 (7th Cir. 2009)................................................................ 16

23  *Hughes Aircraft Co. v. Jacobson*,

24      525 U.S. 432 (1999) ........................................................................ 8

25  *Hughes v. Nw. Univ.*,

26      142 S. Ct. 737 (2022) .................................................................... 3, 10, 19

27  *In re Huntington Bancshares Inc. ERISA Litig.*,

28      620 F. Supp. 2d 842 (S.D. Ohio 2009)........................................................ 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3    *Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*,

4        No. CV 20-9194 DMG, 2021 WL 3508534 (C.D. Cal. Aug. 9, 2021)...................................15

5    *Krutchen v. Ricoh USA, Inc.*,

6        No. 22-678, 2022 WL 16950264 (E.D. Pa. Nov. 15, 2022) ..................................................20

7    *Leimkuehler v. Am. United Life Ins. Co.*,

8        713 F.3d 905 (7th Cir. 2013)..........................................................................................5, 18

9    *In re LinkedIn ERISA Litig.*,

10       No. 5:20-cv-05704-EJD, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) .......................*passim*

11   *Loomis v. Exelon Corp.*,

12       658 F.3d 667 (7th Cir. 2011)....................................................................................................5

13   *Marshall v. Northrop Grumman Corp.*,

14       No. CV 16-06794 AB, 2017 WL 2930839 (C.D. Cal. Jan. 30, 2017) ..................................8, 9

15   *Matney v. Barrick Gold of N. Am., Inc.*,

16       No. 2:20-CV-275-TC-CMR, 2022 WL 1186532 (D. Utah Apr. 21, 2022),

17       *appeal filed*, No. 22-4045 (10th Cir. May 20, 2022) ........................................................6, 19

18   *Matousek v. MidAmerican Energy Co.*,

19       51 F.4th 274 (8th Cir. 2022).................................................................................................*passim*

20   *Meiners v. Wells Fargo & Co.*,

21       898 F.3d 820 (8th Cir. 2018)............................................................................................12, 13

22   *Mills v. Molina Healthcare, Inc.*,

23       No. 2:22-CV-01813-SB-GJS, 2022 WL 17825534 (C.D. Cal. Dec. 8, 2022)........................17

24   *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,

25       926 F.3d 528 (9th Cir. 2019).....................................................................................................7

26   *O'Driscoll v. Plexus Corp.*,

27       No. 20-CV-1065, 2022 WL 3600824 (E.D. Wis. Aug. 23, 2022) ...........................................9

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3    *Obeslo v. Great-W. Cap. Mgmt., LLC*,

4       477 F. Supp. 3d 1216 (D. Colo. Aug. 7, 2020), *aff'd*, 6 F.4th 1135 (10th Cir.

5       2021) ..................................................................................................................... 22

6    *Patterson v. Cap. Grp. Cos.*,

7       No. 2:17-cv-04399-DSF-PJW, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018) ............. 16, 17, 24

8    *Patterson v. Morgan Stanley*,

9       No. 16-CV-6568 (RJS), 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ................................... 15

10   *Probst v. Eli Lilly & Co.*,

11      No. 122-CV-01106J-MSM-KK, 2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) ...................... 20

12   *Raya v. Barka*,

13      No. 19-CV-2295-WQH-AHG, 2020 WL 3469374 (S.D. Cal. June 25, 2020) ...................... 23

14   *Riley v. Olin Corp.*,

15      No. 4:21-cv-01328-SRC, 2022 WL 2208953 (E.D. Mo. June 21, 2022),

16      *reconsideration denied*, 2023 WL 371872 (E.D. Mo. Jan. 24, 2023) .................................... 22

17   *Rosen v. Prudential Ret. Ins. & Annuity Co.*,

18      No. 3:15-cv-1839 (VAB), 2016 WL 7494320 (D. Conn. Dec. 30, 2016), *aff'd*,

19      718 F. App'x 3 (2d Cir. 2017) ............................................................................................ 18

20   *Singh v. Deloitte LLP*,

21      --- F. Supp. 3d ----, 2023 WL 186679 (S.D.N.Y. Jan. 13, 2023) ....................................... 9, 20

22   *Smith v. CommonSpirit Health* ("*Smith I*"),

23      37 F.4th 1160 (6th Cir. 2022) ...................................................................................... *passim*

24   *Smith v. CommonSpirit Health* ("*Smith II*"),

25      No. CV 20-95-DLB-EBA, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *aff'd*,

26      37 F.4th 1160 (6th Cir. 2022) ............................................................................................ 15

27   *Spokeo, Inc. v. Robins*,

28      578 U.S. 330 (2016) ............................................................................................................ 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

vi

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Terraza v. Safeway Inc.*,

    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ............................................................................. 17

*Thole v. U.S. Bank Nat'l Ass'n*,

    140 S. Ct. 1615 (2020) ......................................................................................................... 9

*Tibble v. Edison Int'l*,

    729 F.3d 1110 (9th Cir. 2013)............................................................................................. 19

*Tobias v. NVIDIA Corp.*,

    No. 20-CV-06081-LHK, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021)....................... 19, 23

*Town of Chester v. Laroe Estates, Inc.*,

    581 U.S. 433 (2017) ............................................................................................................. 7

*Warth v. Seldin*,

    422 U.S. 490 (1975) ............................................................................................................. 7

*Wehner v. Genentech, Inc.* ("*Wehner I*"),

    No. 20-cv-06894-WHO, 2021 WL 2417098 (N.D. Cal. June 14, 2021) .................... *passim*

*Wehner v. Genentech, Inc.* ("*Wehner II*"),

    No. 20-CV-06894-WHO, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021)................. 19, 20, 22, 23

*White v. Chevron Corp.* ("*White I*"),

    No. 16-CV-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)............................ 16, 19

*White v. Chevron Corp.* ("*White II*"),

    No. 16-CV-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*,

    752 F. App'x 453 (9th Cir. 2018) .................................................................................. *passim*

*White v. Chevron Corp.* ("*White III*"),

    752 F. App'x 453 (9th Cir. 2018) .......................................................................... 3, 10, 11, 16

*Wildman v. Am. Century Servs., LLC*,

    362 F. Supp. 3d 685 (W.D. Mo. 2019) .............................................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | (continued) |

<b>Page(s)</b>

**Federal Statutes**

ERISA § 3(21), 29 U.S.C. § 1002(21) ........................................................................ 20

ERISA § 3(38), 29 U.S.C. § 1002(38) ........................................................................ 20

ERISA § 405(a), 29 U.S.C. § 1105(a) ........................................................................ 23

ERISA § 413(1), 29 U.S.C. § 1113(1) ........................................................................ 12

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 2, 4, 10

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 2, 4, 10

**Other Authorities**

Dep't of Labor Employee Benefits Security Administration, *A Look at 401(k) Plan
   Fees*,  https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-
   activities/resource-center/publications/a-look-at-401k-plan-fees.pdf .................................... 20

Dep't of Labor, Employee Benefits Security Administration, Tips for Selecting and
   Monitoring Service Providers for Your Employee Benefit Plan,
   https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-
   activities/resource-center/fact-sheets/tips-for-selecting-and-monitoring-service-
   providers.pdf .................................................................................................. 20

Investopedia, *What is an index?*, https://www.investopedia.com/terms/i/index.asp; .................. 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

viii

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO. 4:22−CV−09192−AMO

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Plaintiff, a participant in the Schenker, Inc. 401(k) Savings and Investment Plan ("Plan"), alleges that Defendants breached their fiduciary duties of prudence and loyalty under the Employee Retirement Income Security Act ("ERISA") by:  (1) failing to properly monitor certain existing Plan investment options that purportedly performed poorly or were in a more "expensive" share class when a "cheaper" share class was available; (2) selecting the Janus Henderson Balanced fund (the "Janus fund") to replace the Oakmark Equity and Income fund (the "Oakmark fund") in 2020; and (3) "overpaying" the Plan's former investment advisor, Greenleaf Advisors LLC ("Greenleaf"), for its services.  Plaintiff also alleges that Defendants breached their duty to monitor other unidentified Plan fiduciaries and engaged in a "breach of duty by omission."  None of these allegations states a claim, warranting dismissal of the First Amended Complaint ("FAC").

As a threshold issue, Plaintiff alleges that Defendants failed to properly monitor the Wells Fargo Growth fund (the "Wells Fargo fund"), the Jennison Mid Cap Growth fund (the "Jennison fund"), the Gabelli Small Cap Growth fund (the "Gabelli fund"), and the Invesco Small Cap Value fund (the "Invesco fund").  But Plaintiff did not invest in any of these funds, and therefore could not have been injured by Defendants' alleged failure to monitor them.  As such, Plaintiff lacks Article III standing to bring a claim for breach of fiduciary duty based on the failure to monitor these four funds, and Plaintiff's claims regarding these funds should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

The FAC fares no better under Rule 12(b)(6).  Spanning 453 paragraphs and 107 pages, the FAC is long on style, but short on substance.  Despite devoting pages upon pages to legal conclusions and background, Plaintiff does not allege any *facts* sufficient to plausibly infer imprudent conduct by Defendants.  First, Plaintiff's allegations of poor investment performance fall short.  The FAC fails to use any "meaningful benchmark" to measure the funds' performance, instead relying on market indexes.  But there are no allegations that those market indexes – which are *passively managed* – follow the same investment strategy, take on the same risks, or have the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO. 4:22−CV−09192−AMO

same holdings as the *actively managed* funds Plaintiff challenges.  Courts routinely dismiss such

claims, and the Court should do the same here.

As the Ninth Circuit explained in *White v. Chevron Corp.* ("*White III*") when facing a

complaint with similar allegations, fee comparisons, and performance charts:

> [t]he facts alleged, viewed in the light most favorable to White, were insufficient
> to support a plausible inference of breach of the duty of loyalty, breach of the duty
> of prudence, or that a prohibited transaction took place.  Rather, as to each count,
> the allegations showed only that Chevron could have chosen different vehicles for
> investment that performed better during the relevant period, or sought lower fees
> for administration of the fund.

752 F. App'x 453, 454-45 (9th Cir. 2018) (affirming dismissal of fiduciary breach investment and

fee claims);[1] *Beldock v. Microsoft Corp.* ("*Beldock II*"), No. C22-1082JLR, 2023 WL 3058016, at

\*3 (W.D. Wash. Apr. 24, 2023) (same); *Enos v. Adidas Am., Inc.*, No. 3:19-CV-01073-YY, 2021

WL 5622121, at \*6 (D. Or. Aug. 26, 2021), *R.&R. adopted*, 2021 WL 5611481 (D. Or. Nov. 30,

2021); *Wehner v. Genentech, Inc.* ("*Wehner II*"), No. 20-cv-06894-WHO, 2021 WL 2417098, at

\*8 (N.D. Cal. June 14, 2021) (same); *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL

1055557, at \*2, n.1 (9th Cir. Apr. 8, 2022) (affirming dismissal of fiduciary breach claims based

on comparisons between passively managed and actively managed funds).

Second, Plaintiff contends Defendants selected "higher cost" share classes of four Plan

investment options instead of cheaper versions.  But Plaintiff admits there is a very good reason

for this—the "higher cost" shares generated "revenue sharing" for participants.  And once those

revenue sharing amounts are accounted for, the Plan investments actually were *cheaper* than the

alternative share classes Plaintiff alleges should have been offered instead.  Given this

arrangement, there is no basis to infer Defendants' actions fell outside the "range of reasonable

judgments" that fiduciaries may make.  *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  Indeed,

the complaint in *White III* offered the same kind of share class allegations, which the Ninth

Circuit dismissed.

Third, Plaintiff alleges in conclusory fashion that the fees paid to Greenleaf were

---

[1] A copy of the complaint in *White III* is submitted as Exhibit A to the Declaration of Abbey M. Glenn ("Glenn Decl."), and illustrates the striking similarity to Plaintiff's allegations here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

1   "excessive."  Missing from the FAC, however, are any facts regarding Greenleaf's *services* to the

2   Plan or any other plan, which courts have held are necessary to state a plausible claim for

3   excessive retirement plan compensation.  Nor does the FAC identify any "meaningful

4   benchmark" for Greenleaf's compensation, or any benchmark at all.  In his original complaint,

5   Plaintiff alleged that Greenleaf had thirty other plan clients that paid less than Defendants.  In

6   amending his complaint, Plaintiff has abandoned those allegations.  As a result, all that remains is

7   the bald assertion that Defendants paid too much, without any comparison to what any other plan

8   paid for the same services.  That does not state a claim.

9          Finally, Plaintiff's ancillary claims are equally implausible and without merit for the

10   reasons explained below.  This is Plaintiff's second bite at the apple, yet he still fails to state a

11   plausible claim for relief.  The Court should dismiss Plaintiff's FAC in its entirety with prejudice.

12   **II.     STATEMENT OF ISSUES TO BE DECIDED**

13          1.   Whether Plaintiff's claim that Defendants failed to appropriately monitor four

14   existing Plan investments should be dismissed with prejudice pursuant to Rule 12(b)(1) for lack

15   of Article III standing because Plaintiff does not allege that he invested in any of the funds

16   Defendants allegedly failed to monitor and thus was not injured by any such failure to monitor

17   those funds.

18          2.   Whether Plaintiff's claim for breach of the fiduciary duty of prudence should be

19   dismissed with prejudice pursuant to Rule 12(b)(6) because the FAC lacks any facts from which it

20   can plausibly be inferred that Defendants' decision-making process was flawed.

21          3.   Whether Plaintiff's claim for breach of the duty of loyalty should be dismissed

22   with prejudice because the FAC lacks any facts regarding disloyal actions or any self-dealing.

23          4.   Whether Plaintiff's ancillary claims should be dismissed with prejudice pursuant

24   to Rule 12(b)(6) because they are derivative of Plaintiff's underlying imprudence claims, which

25   fail to state plausible claims for relief.

26          5.   Whether Plaintiff's claim for breach of fiduciary duty "by omission" should be

27   dismissed with prejudice pursuant to Rule 12(b)(6) because the FAC does not identify or allege

28   any facts regarding the "prohibited transactions" Defendants purportedly failed to remedy.

4

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

**III.    RELEVANT FACTUAL BACKGROUND**

      **A.    KEY FEATURES OF THE PLAN**

One of the many benefits Schenker offers its employees is the opportunity to save for retirement through the Plan.  FAC ¶¶ 61-62.  Plaintiff Diego Partida is a former Schenker employee who participates in the Plan.  *Id*. ¶ 9.  The Plan is a "defined contribution" or "individual account" plan, which means that participants are responsible for selecting their own investments, "choosing from the lineup of plan investment options."  *Id*. ¶¶ 61, 85.  Participants' benefits are "limited to the value of their *own* individual accounts."  *Id*. (emphasis added).

There are expenses associated with the Plan, like all retirement plans.  FAC ¶¶ 70, 114, 127.  Almost all mutual funds charge an investment management fee, representing annual charges by the investment manager who is responsible for managing each investment.  *Id*. ¶¶ 96, 193, 234; *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011).  An investment option expresses its fee in the form of an "expense ratio"—a percentage-based deduction against a participant's total assets invested in the fund.  For instance, a participant who invests $1,000 in a fund with an expense ratio of 0.75% pays an annual fee of $7.50 ($1,000 x 0.0075).

Separately, the Plan engages various third-party service providers to perform services relating to the Plan, including administrative, recordkeeping, and investment advisory services.  FAC ¶ 70.  These services vary significantly from plan to plan and provider to provider, based on the specific services provided, the various features of the plan, participants' needs, and the plan's size.  *See, e.g.*, *Smith v. CommonSpirit Health* ("*Smith II*"), 37 F.4th 1160, 1169 (6th Cir. 2022) (fiduciaries may offer different "services and tools" based on the plan's size).  Greenleaf, a former Plan service provider, was the Plan's investment consultant.  FAC ¶ 14.

It is common for retirement plan service providers to be compensated through "revenue sharing," a model where the fund's investment manager shares a portion of the fund's expense ratio with the service provider.  *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 907-08 (7th Cir. 2013) (revenue sharing is "an arrangement allowing mutual funds to share a portion of the fees that they collect from investors with entities that provide services to the mutual funds"); FAC ¶¶ 266, 274.  For example, for a fund with an expense ratio of 0.75%, 0.50% of the 0.75%

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

might be remitted to plan service providers as revenue sharing and 0.25% kept by the mutual fund.  When a fund offers more than one "share class," the different share classes generally have different expense ratios and pay different amounts in revenue sharing.  FAC ¶¶ 193, 274.  As the Seventh Circuit explained, "expense ratios and revenue-sharing payments generally move in tandem: the higher a given share class's expense ratio, the more the fund pays the recordkeeper in revenue sharing." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 574 (7th Cir. 2022) (internal citations and alterations omitted), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022). The choice about whether to use revenue sharing is akin to the choice between paying slightly more for a hotel room that includes breakfast or paying slightly less for the same hotel room but having to pay separately for the breakfast.  If the cost of the room with breakfast is $20 more than the cost for the room without it, and the breakfast costs $20, the net cost is the same for both.

If the amount of revenue sharing exceeds the cost incurred by the service provider to perform services, service providers remit the excess back to participants in the form of a "revenue credit."  *Matney v. Barrick Gold of N. Am., Inc.*, No. 2:20-CV-275-TC-CMR, 2022 WL 1186532, at *7 (D. Utah Apr. 21, 2022), *appeal filed*, No. 22-4045 (10th Cir. May 20, 2022); FAC ¶ 183. Continuing the example above, if a service provider receives 0.50% in revenue sharing from a fund's expense ratio, but only charges 0.40% for its services, then 0.10% in revenue would be credited to the participants invested in that fund.  Here, Plaintiff alleges that Plan service providers were paid through revenue sharing and further that Plan participants received revenue sharing credits from funds in the Plan for any excess above the cost of the services provided. FAC ¶¶ 28, 145, 193, 210-11, 227, 246, 268, 288.  Again, that is like paying for the hotel room that includes free breakfast and receiving a $20 refund if you skip the breakfast.

## B.    PLAINTIFF'S CLAIMS

Plaintiff asserts four claims.  In Count I, Plaintiff alleges Defendants breached their ERISA fiduciary duty of prudence by (a) failing to monitor four funds in the Plan, (b) selecting the Janus fund to replace the Oakmark fund in 2020, and (c) allowing the Plan to pay "excessive" fees to former investment advisor Greenleaf.  FAC ¶¶ 108, 370-98.  In Count II, Plaintiff alleges that same conduct breached Defendants' duty of loyalty.  *Id.* ¶¶ 119, 399-415.  Count III alleges

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22-CV-09192-AMO

1    that Defendants breached their duty to monitor unidentified Plan fiduciaries.  *Id*. ¶¶ 416-27.  And

2    in Count IV, Plaintiff alleges Defendants breached their fiduciary duties "by omission" by failing

3    to remedy unidentified prohibited transactions.  *Id*. ¶¶ 428-40.  Each claim fails.

4    **IV.    ARGUMENT**

5        **A.    PLAINTIFF DOES NOT HAVE ARTICLE III STANDING TO ASSERT
6              CLAIMS THAT DEFENDANTS FAILED TO MONITOR THE WELLS
              FARGO, JENNISON, GABELLI, AND INVESCO FUNDS**

7            **1.    Constitutional Standing Legal Standard**

8

9        The "irreducible constitutional minimum" of standing comprises "three elements."

10   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).  A plaintiff must have: "(1)

11   suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

12   and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (citation omitted).

13       Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the

14   existence of Article III standing and, at the pleading stage, "must clearly allege facts

15   demonstrating each element."  *Id*. at 338 (internal quotations and citation omitted); *see also Baker*

16   *v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show standing must be clearly

17   apparent on the face of the complaint.") (citation omitted).  Further, Plaintiff "must demonstrate

18   standing for *each* claim he seeks to press and for *each* form of relief that is sought."  *Town of*

19   *Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (citation omitted) (emphases added).

20       "In a class action, this standing inquiry focuses on the class representatives."  *NEI*

21   *Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir.

22   2019).  The named plaintiffs "'must allege and show that they personally have been injured, not

23   that injury has been suffered by other, unidentified members of the class to which they belong and

24   which they purport to represent.'"  *In re LinkedIn ERISA Litig.*, No. 5:20-cv-05704-EJD, 2021

25   WL 5331448, at *3 (N.D. Cal. Nov. 16, 2021) (quoting *Warth v. Seldin*, 422 U.S. 490, 502

26   (1975)).

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

2.     **Plaintiff Lacks Article III Standing To Assert A Claim That Defendants Breached Their Fiduciary Duties By Failing To Monitor Funds In Which Plaintiff Never Invested**

Plaintiff alleges that Defendants failed to properly monitor four existing Plan investment options—the Wells Fargo Growth fund, the Jennison Mid Cap Growth fund, the Gabelli Small Cap Growth fund, and the Invesco Small Cap Value fund – all of which had been in the Plan for many years.  FAC ¶¶ 162-68, 176, 236-38, 292, 321-29.[2]  Plaintiff contends these four funds performed poorly and/or were too expensive.  Yet Plaintiff does not allege he invested in any of these funds.  *Id*. ¶ 28.  Because Plaintiff did not invest in the Wells Fargo, Jennison, Gabelli, or Invesco funds, he cannot demonstrate an injury-in-fact resulting from the alleged failure to monitor those four funds.

The Plan is a defined contribution individual account plan.  FAC ¶ 85.  This means each Plan participant's benefit is "limited to the value of their *own* individual accounts, which is determined solely by employee and employer contributions plus the amount gained through investment in the options made available in the plan less expenses." *Id*. (emphasis added).  In other words, a participant's Plan benefit is based on the performance and fees of the investment options he or she selects for his or her individual account.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("[E]ach beneficiary is entitled to whatever assets are dedicated to his individual account.").  The corollary to this principle is that the alleged poor performance of investments or fees charged by funds that a participant *did not* select for her individual account have no impact on her benefit.  *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) (investment "performance losses" are "sustained by only those who invested in" the allegedly poor performing fund.); *In re LinkedIn*, 2021 WL 5331448, at *4.  Put differently, investments in which a participant did not personally invest cannot cause any harm to that participant.

---

[2] Plaintiff also alleges that Defendants breached their fiduciary duties by selecting the Janus Henderson fund to replace the Oakmark Equity and Income fund in 2020.  FAC ¶¶ 312-17.  Defendants do not challenge Plaintiff's Article III standing to press this claim challenging this decision.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

8

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

For these reasons, courts in this District and "across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in." *In re LinkedIn*, 2021 WL 5331448, at *4 (collecting cases). That is precisely the scenario here. Plaintiff does not allege he invested in the Wells Fargo, Jennison, Gabelli, or Invesco funds, and thus he has not demonstrated Article III standing to bring claims alleging a failure to monitor these funds. *Id.*; *see also Marshall*, 2017 WL 2930839, at *8-9 (dismissing poor performance and expensive plan services fees for lack of standing); *Alas v. AT&T Inc.*, No. 17-cv-08106, 2018 WL 6133648, at *5 (C.D. Cal. Oct. 29, 2018) (plaintiff who did not invest in brokerage service's mutual funds did not have Article III standing to bring claims contending those funds were offered in "expensive" share classes).[3]

Nor does Plaintiff gain standing to challenge the failure to monitor these four funds simply because he seeks relief on behalf of the Plan or because he has Article III standing to challenge the decision in 2020 to replace the Oakmark fund with the Janus fund. There is "no ERISA exception to Article III" and its standing requirements. *Thole v. U.S. Bank Nat'l Ass'n*, 140 S. Ct. 1615, 1622 (2020). Although ERISA "authorize[s] plan participants to sue fiduciaries for losses the plan suffers from a breach of their duties," this "statutory authorization does not itself confer Article III standing." *Marshall*, 2017 WL 2930839, at *8; *In re LinkedIn*, 2021 WL 5331448, at *3; *Singh v. Deloitte LLP*, --- F. Supp. 3d ----, 2023 WL 186679, at *4 (S.D.N.Y. Jan. 13, 2023) (plaintiffs did not invest in "four of the six challenged funds" and lacked Article III standing to bring plan-wide claims regarding the "allegedly poor performance of those specific products") (citations omitted). As such, Plaintiff's claims alleging that Defendants failed to monitor the Wells Fargo, Jennison, Gabelli, and Invesco funds should be dismissed pursuant to

---

[3] *See also Fritton v. Taylor Corp.*, No. 22-CV-00415, 2022 WL 17584416, at *5 (D. Minn. Dec. 12, 2022) (plaintiffs lacked Article III standing to bring "expensive-share-class" claims regarding funds they did not allege they invested in); *O'Driscoll v. Plexus Corp.*, No. 20-CV-1065, 2022 WL 3600824, at *4 (E.D. Wis. Aug. 23, 2022) (plaintiffs lacked standing to bring claims regarding the share classes of 11 mutual funds they did not allege investing in); *In re LinkedIn*, 2021 WL 5331448, at *4 (plaintiffs could not demonstrate Article III standing for claims based on the "offering [of] imprudent investment options" where they failed to allege investment in the challenged funds); *Beldock v. Microsoft Corp.* ("*Beldock I*"), No. C22-1082-JLR, 2023 WL 1798171, at *4 (W.D. Wash. Feb. 7, 2023) (plaintiff lacked Article III standing to bring claims challenging fund performance when he did not invest in funds that allegedly performed poorly).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22-CV-09192-AMO

Rule 12(b)(1).

## B.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE

### 1.   Rule 12(b)(6) Legal Standard

To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Where there are two possible explanations, only one of which can be true and only one of which results in liability, [a plaintiff] cannot offer allegations that are merely consistent with [his] favored explanation but are also consistent with the alternative explanation." *White III*, 752 F. App'x at 454 (citing *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true." *Id.* (quotations and citation omitted).

ERISA's "test of prudence" asks whether the retirement plan fiduciaries, "at the time they engaged in the challenged [activity], employed the appropriate methods to investigate the merits of the investment." *White v. Chevron Corp.* ("*White II*"), No. 16-CV-0793-PJH, 2017 WL 2352137, at *13 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (quotations and citation omitted). The question is not whether a cheaper or better performing investment existed in the marketplace. *Id.* at *4 (prudence analysis focuses on conduct, not results). Rather, to nudge a claim from conceivable to plausible, a plaintiff must allege factual allegations supporting an inference that the fiduciaries' "*decisionmaking process*" was unlawful. *Id.* at *13 (emphasis added).

Critical to this process-focused inquiry is recognizing that ERISA fiduciaries will often face "difficult tradeoffs" when making decisions, thus courts "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. That is because ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *Smith II*, 37 F.4th at 1162. Consequently, a motion to dismiss is an "important mechanism for weeding out meritless claims," requiring courts to engage in a "careful, context-sensitive scrutiny" of a plaintiff's claims. *Fifth*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO. 4:22-CV-09192-AMO

1   *Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

2       In *White III*, the plaintiffs alleged fiduciary claims strikingly similar to those alleged here,

3   based on alleged fund underperformance, higher cost share classes, and excessive fees:

| *White* | **Plaintiff's FAC** |
|---|---|
| Defendants breached their fiduciary duties by offering a poor performing money market fund and Artisan Small Cap Value Fund that were too expensive, underperformed benchmark indices and performed worse than identified alternatives. Ex. A ¶¶ 41-56, 60-64, 130-34. | Defendants breached their fiduciary duties by offering the Wells Fargo, Jennison and Gabelli funds, each of which were too expensive and performed poorly compared to alternatives and benchmark indices.  FAC ¶¶ 160-73, 322-25, 319, 329.<br><br>Defendants breached their fiduciary duties by selecting the Janus fund to replace the Oakmark fund even though it performed worse.  FAC ¶¶ 312-16. |
| Defendants breached their fiduciary duties by offering thirteen mutual funds when identical lower cost share classes of the same funds were available. Ex. A ¶¶ 77, 79, 82-84. | Defendants breached their fiduciary duties by offering "expensive" share classes of four mutual funds in the Plan when "cheaper" share classes of the same funds were available.  FAC ¶¶ 165-68, 236-38, 260, 287-92. |
| Defendants breached their fiduciary duties by paying about $175 per participant in administrative fees to the plan's service provider when the reasonable fee would have been $25 per participant.  Ex. A ¶¶ 111-25. | Defendants breached their fiduciary duties by paying Plan service provider Greenleaf "between $256,466 - $342,419" per year when the "average" fee is $107,250 per year.  FAC ¶¶ 19-20. |

17      In support of their claims, the *White* plaintiffs offered the same sorts of charts and graphs

18   of investment performance and fees as those in the FAC here.  Ex. A ¶¶ 44, 56-57, 60, 62, 79, 88,

19   91, 103, 135, 138.  The Ninth Circuit affirmed dismissal of those allegations pursuant to the

20   principles explained above, explaining that these allegations "showed only that Chevron could

21   have chosen different vehicles for investment that performed better during the relevant period, or

22   sought lower fees for administration of the fund," which was not sufficient to state a claim.  *White*

23   *III*, 752 F. App'x at 454-55; *see also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278-82

24   (8th Cir. 2022) (affirming dismissal of fiduciary breach claims based on excessive fees paid to

25   service providers and offering poorly performing funds); *Smith II*, 37 F.4th at 1165-70 (same);

26   *Albert*, 47 F.4th at 579-82 (affirming dismissal of fiduciary breach claims based on excessive fees

27   paid to service providers and offering of higher-cost share classes).  Plaintiff's claim here fails for

28   the same reasons as in *White III*.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22-CV-09192-AMO

1

2

**2.     Plaintiff's Allegations That Defendants Failed To Monitor Three Funds That Performed Poorly Does Not State A Claim**

3       Plaintiff alleges Defendants breached their fiduciary duties by failing to monitor three

4   allegedly poor performing funds: the Wells Fargo fund (FAC ¶¶ 160-73); the Jennison fund (*id.*

5   ¶¶ 322-25); and the Gabelli fund (*id.* ¶¶ 319, 329).[4]  These are the same allegations considered

6   and rejected in *White III*, and do not state a claim.

7       First, allegations of a fund's poor performance are "not sufficient to create a reasonable

8   inference that plan fiduciaries failed to conduct an adequate investigation—either when the

9   investment was selected or as its underperformance emerged."  *White II*, 2017 WL 2352137, at

10  *20; *see also Smith II*, 37 F.4th at 1167 ("disappointing performance by itself does not

11  conclusively point towards deficient decision-making, especially when we account for competing

12  explanations and other common-sense aspects of long-term investments") (quotation and citation

13  omitted); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 n.3 (8th Cir. 2018) ("[T]he choice of

14  a particular fund is not flawed merely because of the existence of one fund that ended up

15  performing better[.]").  That is because allegations of investment underperformance "with the

16  benefit of hindsight" do not plausibly suggest that a plan fiduciary acted imprudently.  *White II*,

17  2017 WL 2352137, at *20-21; *see also Beldock II*, 2023 WL 3058016, at *3 ("[C]ourts across the

18  country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the

19  plaintiffs allege nothing more than underperformance relative to other investment vehicles");

20  *Beldock I*, 2023 WL 1798171, at *7 (dismissing claim and rejecting the plaintiffs' request "to

21  infer, based on the quarterly charts of three- and five-year annualized returns they present in their

22  complaint, that Defendants must have breached their fiduciary duty of prudence when they did

23  not divest from the BlackRock TDFs") (citations omitted); *Enos*, 2021 WL 5622121, at *6

24  (dismissing claim alleging "certain investments . . . produced suboptimal results").

25      Second, where a plaintiff claims "a prudent fiduciary in like circumstances would have

26

27  ───────────────
    [4]  Plaintiff alleges the Wells Fargo fund was included in the Plan since 2011 and the Gabelli and
28  Jennison funds were in the Plan before 2009.  FAC ¶¶ 165, 176, 288, 290, 321.  To the extent
    Plaintiff challenges the initial selection of these funds, which took place more than six year ago,
    those claims are untimely under ERISA's six-year statute of repose.  29 U.S.C. § 1113(1).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

selected a different fund based on the cost or performance of the selected fund, plaintiff must provide a sound basis for comparison—a meaningful benchmark." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1147 (N.D. Cal. 2022), *appeal filed*, No. 22-16268 (9th Cir. Aug. 22, 2022) (quoting *Meiners*, 898 F.3d at 823); *see also Wehner II*, 2021 WL 2417098, at *8 (recognizing "meaningful benchmark" requirement).  To constitute a meaningful benchmark, a plaintiff must identify a comparator that has "similar aims, risks, and potential rewards" as the challenged fund.  *Anderson*, 579 F. Supp. 3d at 1148; *see also Wehner II*, 2021 WL 2417098, at *8 (a complaint must contain "factual allegations that compare the products' styles and strategies to support a finding of 'meaningful benchmark'").[5]

The FAC falls short of that "meaningful benchmark" requirement.  The FAC primarily relies on uninvestible market indexes as the benchmarks for showing the Plan's investments performed poorly.  FAC ¶¶ 163-64 (identifying the Russell 1000 Growth index, S&P 1500 index, and S&P 500 Growth index as the "benchmarks" for the Wells Fargo Growth fund); *id.* ¶ 325 (identifying the Morningstar US Mid Growth Index as the "benchmark" for the Jennison Mid-Cap Growth fund);[6] *id.* ¶ 326 (using the Russell 2000 and Russell 2000 Growth indexes as the "benchmarks" for the Gabelli Small Cap Growth fund).  But there are no allegations that the proffered market indexes have the same "styles and strategies" as the challenged Plan investment options they are measured against.  *Wehner II*, 2021 WL 2417098, at *8 (dismissing underperformance claims based on comparisons to market indexes because plaintiff failed to allege how the indexes and the challenged funds "all share the same overall purpose and strategy").  Indeed, the plaintiffs in *White III* made the same argument when alleging that the Artisan Small-Cap fund in that case "significantly underperformed its benchmark, the Russell 2000, for out of the most recent five years" and ranked below the median of its peer group.  Ex. A ¶¶ 132-33.

---

[5] After all, investments with different strategies, holdings, and fees are expected to perform differently.  *See, e.g.*, *Meiners*, 898 F.3d at 823 (the "fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice").

[6] It is puzzling that Plaintiff relies on the Morningstar index given his allegation that "Morningstar's benchmarks . . . do not form a 'sound basis for comparison.'"  FAC ¶ 155.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22-CV-09192-AMO

Here, Plaintiff's allegations fail for the same reasons they failed in *White III*. Moreover, the FAC does not allege that the market indexes have the same "aims, risks, and rewards" as the challenged funds and therefore they "cannot serve as a meaningful benchmark." *Anderson*, 579 F. Supp. 3d at 1153. Indeed, the market indexes also are not meaningful benchmarks because they are *passively managed* indexes that Plaintiff is trying to compare to actively managed funds. *See* FAC ¶¶ 94, 137, 207, 330.[7] As the Eighth Circuit recognized, market indexes are not meaningful benchmarks for active funds like the investment options challenged here. *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 n.4 (8th Cir. 2020) (rejecting argument that Russell 3000 Index was a meaningful benchmark for challenged active fund because "it is not a fund, much less an actively managed one"). The Ninth Circuit reached this same conclusion in *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2, n.1 (9th Cir. Apr. 8, 2022) (affirming dismissal of claims based on comparisons between passively managed and actively managed funds); *see also Smith II*, 37 F.4th at 1163 (same); *Albert*, 47 F.4th at 582 (same); *Enos*, 2021 WL 5622121, at *7 (same).

Plaintiff also argues that the Jennison and Gabelli funds performed below average. FAC ¶¶ 325, 329. But that cannot save his claims. Perhaps most importantly, the plaintiffs in *White III* made the same allegations and the Ninth Circuit rejected them. Specifically, the *White III* plaintiffs alleged that the Artisan Small Cap Value Fund "ranked below the median of its peer group based on one-year total returns for 15 out of 17 quarters" and "ranked below the median of its peer group based on three-year total return, and consistently in the bottom decile (70th, 84th, 97th, 96th, 96th, 94th, 95th, 94th, and 96th). Ex. A ¶¶ 132-33. Plaintiff's allegations here do not even come close to those in *White III*, and if such allegations did not suffice to state a claim in *White III*, they cannot here either. And there are good reasons for this. No participant can invest in an average fund with average performance—a retirement plan must offer a specific investment option, not an "average" of multiple funds. Moreover, conclusory allegations "labeling funds as 'comparable' or 'peer' [are] insufficient to establish that comparator funds are meaningful

---

[7] "'Indexing' is a form of passive fund management." Investopedia, *What is an index?*, https://www.investopedia.com/terms/i/index.asp; *see also Smith II*, 37 F.4th at 1163 (index funds "create a fixed portfolio structured to match the overall market or a preselected part of it").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO. 4:22-CV-09192-AMO

benchmarks" in the first place. *Anderson*, 579 F. Supp. 3d at 1147; FAC ¶ 329 (purporting "to illustrate the comparison of peers").[8]

Accordingly, courts routinely dismiss investment underperformance claims like Plaintiff's. *E.g.*, *Beldock II*, 2023 WL 3058016, at *2 (dismissing investment performance claim using S&P Target Date Indices as benchmark); *Smith v. CommonSpirit Health* ("*Smith I*"), No. CV 20-95-DLB-EBA, 2021 WL 4097052, at *8 (E.D. Ky. Sept. 8, 2021) (finding "the Russell 1000 Value Index is an unsuitable comparator"), *aff'd*, 37 F.4th at 1169; *Wehner II*, 2021 WL 2417098, at *8 (dismissing claim based on comparison to S&P Indices); *In re LinkedIn*, 2021 WL 5331448, at *9 (comparison to S&P 500 Index was "insufficient" to state a plausible imprudence claim); *Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*, No. CV 20-9194 DMG (JEMx), 2021 WL 3508534, at *7 (C.D. Cal. Aug. 9, 2021) (rejecting underperformance claim based on comparisons to the MSCI World Index and 60/40 Index). The same result is warranted here.

### 3.    Plaintiff's Allegations That Defendants Breached Their Fiduciary Duty By Selecting The Janus Fund To Replace The Oakmark Fund In 2020 Do Not State A Claim

Plaintiff separately alleges that Defendants breached their fiduciary duty by selecting the Janus Henderson Balanced fund to replace the Oakmark fund in 2020 because, he contends, the Oakmark fund had better performance. FAC ¶¶ 312-16 ("Defendants acted to select" the Janus fund to replace the Oakmark fund despite the latter's "better 20-year total return"). That claim fails as a matter of law.

Most importantly, the principles described above, including those articulated in *White III*,

---

[8]  Plaintiff also claims that a few funds had "unproven" performance track records due to short manager tenure. FAC ¶¶ 342-46. Even if the FAC sufficiently alleged when those funds were in the Plan as compared to the manager tenure (it does not), allegations of an unproven fund manager or "untested" performance do not get Plaintiff over the goal line. *See Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019) (allegation that a fund "was untested is [] insufficient to establish imprudence in the selection and retention of the fund"); *Wehner II*, 2021 WL 2417098, at *8 (dismissing claim for offering custom target date funds, which by definition have no prior performance record because they are created specifically for the particular plan); *see also Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 705 (W.D. Mo. 2019) (noting plaintiffs "cite no authority holding that the implementation of a fund without a long performance history is *per se* imprudent"). This makes sense, otherwise no retirement plan would ever invest in a new fund because doing so would impose *per se* liability and it would stifle innovation in the retirement fund industry.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

15

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22–CV–09192–AMO

apply equally to Plaintiff's challenge to the Janus fund.  *See supra* Section IV(B)(2).  Simply put, Plaintiff cannot state a claim merely by alleging that Defendants "could have chosen different vehicles for investment that performed better during the relevant period."  *White III*, 752 F. App'x at 455.  In fact, Plaintiff alleges that when the decision was made, the Janus fund had *better* three- and five-year performance than the Oakmark fund, and that the Oakmark fund's performance only appears better if one looks back *twenty years*.  FAC ¶¶ 313, 315.  To Defendants' knowledge, no court has ever allowed a claim under these circumstances.  And here, the FAC alleges no facts that the Janus and Oakmark funds even had the same "aims, risks, and potential rewards," *Anderson*, 579 F. Supp. 3d at 1148, or "styles and strategies," *Wehner II*, 2021 WL 2417098, at *8.  Plaintiff's conclusory allegations of "better" performance do not state a plausible claim.  *Beldock II*, 2023 WL 3058016, at *3 ("measurements of investment performance" do not "raise Plaintiffs' claim above the level of speculation and into plausibility").

Worse yet, the FAC's performance and fee allegations are about the *wrong* Oakmark fund. Plaintiff alleges that the Plan offered the "Oakmark Equity and Income *Investor*" share class before replacing it with the Janus fund.  FAC ¶ 210.  But then Plaintiff engages in a slight of hand by discussing the fees and performance of the Oakmark "Institutional" share class, which is a different fund with a different expense ratio.  *Id.* ¶¶ 315-16.  The FAC contains no allegations about the actual Investor share class fund that was in the Plan and replaced by the Janus fund. For that additional reason, Plaintiff's claim should be dismissed.

### 4.    Plaintiff's Share Class Allegations Do Not State A Claim

Plaintiff further alleges Defendants breached their fiduciary duties by offering four Plan investment options in so-called "higher cost" share classes:  the Wells Fargo fund, Invesco fund, Janus fund, and Gabelli fund.  FAC ¶¶ 165-68, 236-38, 260, 287-92.  These allegations likewise fail to state a claim.

To start, the legal premise of Plaintiff's claim is flawed.  ERISA does not require fiduciaries to "'scour the market to find and offer the cheapest possible funds.'"  *White v. Chevron Corp.* ("*White I*"), No. 16-CV-0793-PJH, 2016 WL 4502808, at *10 (quoting *Hecker v. Deere*, 556 F.3d 575, 586 (7th Cir. 2009)); *see also Patterson v. Cap. Grp. Cos.*, No. 2:17-cv-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

04399-DSF-PJW, 2018 WL 748104, at *4 (C.D. Cal. Jan. 23, 2018) ("courts have routinely held that a fiduciary's failure to offer the cheapest investment option is not enough by itself to state a claim for a breach of fiduciary duty.").

Indeed, the plaintiffs in *White III* made the same argument challenging thirteen different funds in the Chevron plan because cheaper share classes of the same exact funds were available. Ex. A ¶¶ 79-83. The plaintiffs even included a chart showing the expense ratio of each challenged fund in the plan and the expense ratio of the "Identical Lower Cost Mutual Fund." *Id.* Those allegations were insufficient to state a claim in *White III*, and they do not state a claim here either. *See Mills v. Molina Healthcare, Inc.*, No. 2:22-CV-01813-SB-GJS, 2022 WL 17825534, at *11 (C.D. Cal. Dec. 8, 2022) ("the mere inclusion of a fund with an expense ratio that is higher than that of the lowest share class" is not enough, standing alone, to state a claim for breach of the duty of prudence) (citation omitted); *In re LinkedIn*, 2021 WL 5331448, at *9 (dismissing share class claims because "merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach") (citation omitted).

Here, moreover, Plaintiff's share class claim fails as a matter of law because of simple arithmetic. The FAC alleges the "higher cost" share classes in the Plan paid revenue sharing and those amounts were credited back to participants, to either pay for those participants' share of Plan expenses or to be deposited into their accounts. FAC ¶¶ 28, 145, 193, 210-11, 227, 246, 268, 288. Once that revenue sharing is accounted for, the Plan's investment options actually cost *less* than the alternatives Plaintiff advocates:

*Janus Fund.* The only fund Plaintiff actually invested in was the Janus Fund, T share class. Plaintiff alleges after that fund was added to the Plan in 2020, it was too expensive because it had an expense ratio of 0.82%, whereas the "I" and "N" share classes had expense ratios of 0.64% and 0.57%, respectively. FAC ¶ 260. But the Janus Fund T share class paid 0.35% in revenue sharing that was a "Credit to Participant Accounts." Glenn Decl., Ex. B at 1.[9] As a

---

[9] The Court can appropriately consider ERISA participant communications in ruling on this Motion. *E.g.*, *White II*, 2017 WL 2352137, at *18 (taking judicial notice of participant fee disclosures); *In re LinkedIn*, 2021 WL 5331448, at *5, *9 (taking judicial notice of participant disclosures and communications); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1066 (N.D. Cal. 2017) (taking judicial notice of "participant fee disclosure notices"); *Asner v. SAG-AFTRA*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

17

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO. 4:22-CV-09192-AMO

1    matter of math, 0.82% - 0.35% is 0.47%.  In other words, the Janus Fund T share class actually

2    costs *less* than Plaintiff's comparators once accounting for the revenue sharing.

3            *Wells Fargo Fund.*  Plaintiff also alleges the Plan offered the Wells Fargo Fund Admin.

4    share class with an expense ratio of 0.96% and that a cheaper R6 share class only charged 0.70%.

5    FAC ¶ 164.  But the Wells Fargo Admin. share class paid revenue sharing of 0.40%, for a net cost

6    of 0.56% (0.96%-0.40%).  Ex. B at 1.  In other words, that Admin. share class was again cheaper

7    than the alternative Plaintiff advocates.

8            *Invesco Fund.*  Plaintiff alleges that the Invesco Fund A share class had an expense ratio

9    of 110 basis points[10] and that cheaper share classes were available that charged 86 or 73 basis

10   points.  FAC ¶ 236.  But the Invesco Fund A share class paid revenue sharing of 50 basis points

11   (0.50%).  Ex. B at 1.  Again, the math confirms that the Invesco Fund A share class was cheaper

12   (110-50=60 basis points) than the alternative share classes Plaintiff prefers.

13           *Gabelli Fund.*  Lastly, Plaintiff alleges the Plan offered the Gabelli fund in the A share

14   class although there was a "cheaper" I share class available.  For this fund, Plaintiff

15   conspicuously does *not* actually allege the fees for either share class.  But the website referred to

16   in FAC Paragraph 329 shows that the A share class charges 1.38% and the I share class charges

17   1.13%, a difference of 0.25%.[11]  But again, the A share class paid 0.40% in revenue sharing, Ex.

18   B at 1, making it cheaper than the I share class for which Plaintiff advocates.

19           Under these circumstances, and because revenue sharing is lawful, common, and proper,

20   there can be no inference of a fiduciary breach.  *Leimkuehler*, 713 F.3d at 908 (revenue sharing

21   "has been commonplace for years"); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-

22   1839 (VAB), 2016 WL 7494320, at *10 (D. Conn. Dec. 30, 2016) (collecting cases holding that

23   ERISA allows a revenue-sharing model), *aff'd*, 718 F. App'x 3 (2d Cir. 2017); *Matney*, 2022 WL

24

25   *Health Fund*, 557 F. Supp. 3d 1018, 1024 (C.D. Cal. 2021) (taking judicial notice of a letter from
     plan fiduciaries to plan participant); *Gonzalez v. Northwell Health, Inc.*, --- F. Supp. 3d ----, 2022

26   WL 4639673, at *1 (E.D.N.Y. Sept. 30, 2022) (taking judicial notice of a "Plan Participant
     Disclosure Notice").

27   [10] A basis point is one one-hundredth of one percent.  So, for example, 110 basis points is 1.10%.

28   [11]  The FAC also alleges that the total performance difference between the funds over three years
     was a total of 0.87% (19.00-18.13).  FAC ¶ 329.  That is approximately 0.29% per year.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

1186532, at *7 (dismissing share class claim where plan participants received revenue credit from

higher-cost share classes).  The FAC does not plausibly allege that Defendants' conduct falls

outside the "range of reasonable judgments" fiduciaries may make.  *Hughes*, 142 S. Ct. at 742.

Plaintiff's share class allegations fail to state a claim as a matter of law and should be dismissed.

*See Tobias v. NVIDIA Corp.*, No. 20-CV-06081-LHK, 2021 WL 4148706, at *11 (N.D. Cal. Sept.

13, 2021) (dismissing share class claim where revenue sharing from higher-cost shares was used

to pay plan expenses); *In re LinkedIn*, 2021 WL 5331448, at *10 (dismissing share class claim

and rejecting argument that "it is utterly irrational to offer anything but the least expensive share

class" because it "goes squarely against Ninth Circuit law rejecting such bright-line rules") (citing

*Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013)).

### 5. Plaintiff's Challenge To Greenleaf's Compensation Does Not State A Plausible Claim For Relief

Plaintiff also takes aim at the fees paid to the Plan's former investment advisor, alleging

Defendants "overpaid" Greenleaf, whose costs "exceeded" those "incurred by plans of similar

size with similar services." FAC ¶ 119.  Yet Plaintiff has not alleged any facts identifying those

"plans of similar size" or describing those so-called "similar services."

To plausibly plead a claim for excessive service provider fees, Plaintiff must allege the

fees were "excessive in relation to the *specific* services [] provided to the *specific plan* at issue."

*Wehner v. Genentech, Inc.* ("*Wehner I*"), No. 20-CV-06894-WHO, 2021 WL 507599, at *5 (N.D.

Cal. Feb. 9, 2021).  The FAC must contain factual allegations that plausibly infer "the same

services were available for less on the market."  *White I*, 2016 WL 4502808, at *14; *see also, e.g.*,

*Smith II*, 37 F.4th at 1169 (dismissing claims for failure to state that "fees were excessive relative

to the services rendered"); *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022)

(affirming dismissal where "the employees never alleged that these fees were high in relation to

the services that the plan provided"); *Matousek*, 51 F.4th at 279 (affirming dismissal because the

plaintiffs failed to "identify similar plans offering the same services for less").  In other words,

Plaintiff must allege "what those services are."  *Matousek*, 51 F.4th at 279.

Yet the FAC is utterly devoid of factual allegations regarding Greenleaf's services.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22–CV–09192–AMO

1    Plaintiff does not allege what *specific* services Greenleaf provided to *the Plan*, asserting only that

2    Greenleaf broadly provided "Investment Advice."  FAC ¶ 19.  And while Plaintiff alleges that

3    Greenleaf's services "remained precisely the same each year," *id*. ¶ 72, he never alleges what

4    those services were.  Such context is necessary because "[c]ost is only one factor to be considered

5    in selecting a [retirement plan] service provider."[12]  In fact, Department of Labor ("DOL")

6    guidance warns against "consider[ing] fees in a vacuum" because "[t]hey are only one part of the

7    bigger picture, including . . . the extent and quality of services provided"[13]  That is because a

8    401(k) plan "may offer a host of additional services, such as telephone voice-response systems,

9    access to customer service representatives, educational seminars, retirement planning software,

10   investment advice" and more."  *Id.* at 3.[14]  Even Plaintiff concedes that investment advisors can

11   provide different types of services.  The FAC alleges that some advisors "serve with discretion"

12   pursuant to ERISA § 3(38), while others do not.  FAC ¶ 121; *see also* 29 U.S.C. §§ 1002(21),

13   1002(38).  It stands to reason that different services will entail different costs.[15]

14         The FAC suffers from another fatal deficiency—it offers no "meaningful benchmark" for

15   the Plan's investment advisory fees. *E.g.*, *Matousek*, 51 F.4th at 279 ("the key to stating a

16   plausible excessive-fees claim is to make a like-for-like comparison"); *Wehner I*, 2021 WL

17   507599, at *6-7 (dismissing claim for failure to identify any "adequate market comparator" for

18

19 [12]  Dep't of Labor, Employee Benefits Security Administration, Tips for Selecting and
      Monitoring Service Providers for Your Employee Benefit Plan, at 1, https://www.dol.gov/sites/
20      dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/tips-for-selecting-and-
      monitoring-service-providers.pdf (emphasis added).

21 [13]  Dep't of Labor Employee Benefits Security Administration, *A Look at 401(k) Plan Fees*, at 9,
      https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center
22      /publications/a-look-at-401k-plan-fees.pdf.

23 [14]  While Plaintiff purports to rely on DOL guidance, FAC ¶ 357, the FAC is wholly inconsistent
      with it.  Despite the DOL's pronouncement that retirement plan services vary and "generally the
24      more services provided, the higher the fees," the FAC lacks any factual allegations regarding
      Greenleaf's services or fees that provide this necessary context.  *A Look at 401(k) Plan Fees*, at 3.

25 [15]  *See, e.g.*, *Probst v. Eli Lilly & Co.*, No. 122-CV-01106J-MSM-KK, 2023 WL 1782611, at *10
      (S.D. Ind. Feb. 3, 2023) (rejecting allegations that all large plans receive nearly identical
26      services); *Singh*, 2023 WL 186679, at *5 (recognizing that even within a range of certain
      services, plan service providers will not necessarily deliver "an identical subset of services within
27      that range"); *Krutchen v. Ricoh USA, Inc.*, No. 22-678, 2022 WL 16950264, at *3 (E.D. Pa. Nov.
      15, 2022) (allegations regarding the quality and type of services are necessary to survive
28      dismissal because retirement plans "may select diverse services" and "priortiz[e] various options
      differently").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22–CV–09192–AMO

service provider fees).  The FAC identifies only the *amount* of compensation that Greenleaf allegedly earned for services provided to the Plan.  FAC ¶ 203 (chart showing Greenleaf's compensation).  It is utterly devoid of context—there is no fee comparison to any plan or benchmark whatsoever.  Not only does the FAC fail to allege a meaningful comparator, it fails to identify what *any other plan* paid for investment advisory services provided by Greenleaf or even any investment advisor.

By way of example, in *Wehner II*, the court held that the plaintiff's general allegations of excessive fees were not sufficient to state a claim because they did not "focus on the *specific services* the recordkeeper provided to the *specific* plan at issue.  Instead of describing the services provided by Fidelity to the Roche Plan, Wehner merely provides the common types of RK&A services that service providers typically perform for retirement plans."  2021 WL 2417098, at *5 (quotations and citations omitted).  The court went on to find that the plaintiff had sufficiently identified one specific similarly-sized plan using the very same service provider to receive the same services at a lower fee, which was sufficient.  *Id*. at *6 (finding allegations that Fidelity provided "the same kinds of services" to the Danaher plan, "a plan with a similar participant population and relatively smaller asset size" like the Genentech plan sufficed to support an inference of imprudent conduct).  And in so doing, the court held that the other comparators for whom the plaintiffs had advocated were not sufficiently comparable in plan size, plan service provider, or plan services to provide a benchmark against which the challenged fees could be evaluated.  *Id*. at *5-6.

Here, Plaintiff alleges no such facts about any comparable plans receiving the same services – let alone from the same service provider.  Instead, when amending the complaint, he did the opposite—abandoning prior allegations that Defendants paid more for Greenleaf's services than 30 other Greenleaf clients.  Dkt. 1 ¶¶ 180, 186.  Plaintiff also does not even identify the "specific services" provided by Greenleaf to the Plan here.  Without such allegations, all that remains of Plaintiff's claim is the bald assertion that Defendants paid too much.  This does not suffice to state a plausible claim for excessive plan service provider compensation.  *E.g., id.*; *Smith II*, 37 F.4th at 1169 (plaintiff "fails to give the kind of context that could move [his] claim

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22–CV–09192–AMO

1    from possibility to plausibility."); *Matousek*, 51 F.4th at 279 ("Even if the fees here look high, we

2    cannot infer imprudence unless *similarly sized* plans spend less on the same services") (emphasis

3    added); *Wehner I*, 2021 WL 507599, at *5 (dismissing claim where plaintiff failed to provide

4    "some plausible basis that the market comparators were 'similarly-sized plans' or are 'plans like

5    those at issue'").[16]

6         Plaintiff's suggestion that the Plan paid Greenleaf more than the "average Investment

7    Advisory Fee" from the Advisor Fee Almanac cannot save his claims.  FAC ¶ 20.  Average costs

8    are not meaningful benchmarks, as numerous courts have held.  *E.g.*, *Matousek*, 51 F.4th at 280

9    (holding "average" fees are not meaningful benchmarks); *Smith II*, 37 F.4th at 1169 (rejecting

10   allegations of "industry average costs" for plan services as basis to infer fiduciary breach);

11   *Wehner I*, 2021 WL 507599, at *5-6 (rejecting use of "market comparator from the 401(k)

12   Average Book" as meaningful comparison of plan's fees and dismissing excessive fees claim

13   based on "average cost" for recordkeeping and administration services).

14        In turn, alleging that Greenleaf's fees were above the Almanac's "average" does not

15   plausibly suggest a breach.  *Wehner I*, 2021 WL 507599, at *5-7; *Riley v. Olin Corp*., No. 4:21-

16   cv-01328-SRC, 2022 WL 2208953, at *6 (E.D. Mo. June 21, 2022), *reconsideration denied*, 2023

17   WL 371872 (E.D. Mo. Jan. 24, 2023) (dismissing excessive fee claim, finding average fee from

18   industry study was not a meaningful benchmark, and rejecting the plaintiffs' argument that doing

19   so "impermissibly drags the Court into the factual weeds").  The reason courts reject reliance on

20   average fees to suggest imprudence is simple.  If that were the test, every single retirement plan

21   with costs above "average"—about half of all plans—would be "imprudent."  *See Obeslo v.*

22   *Great-W. Cap. Mgmt., LLC*, 477 F. Supp. 3d 1216, 1225 n.4 (D. Colo. Aug. 7, 2020) (the mere

23   fact that a given mutual fund has higher expenses than "industry average fees" does not render the

24   fees excessive; otherwise, "half of all mutual funds would have 'excessive' fees'"), *aff'd*, 6 F.4th

25   1135 (10th Cir. 2021).  That cannot be the case.

26

27   _____

     [16]  *See also Glick v. ThedaCare, Inc*., No. 20-CV-1236-WCG-SCD, 2022 WL 16927749, at *4

28   (E.D. Wis. Oct. 27, 2022), *R&R adopted*, No. 20-C-1236, 2022 WL 16924188 (E.D. Wis. Nov.
     14, 2022) (dismissing managed account fee claims because the complaint did "not describe the
     specific services provided").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

1      Further compounding the problem, Plaintiff's reliance on the Advisor Fee Almanac is

2   misguided.  Plaintiff alleges that Greenleaf provided both investment management services and

3   investment advisory services to the Plan.  FAC ¶ 22.  But, per the FAC's own allegations, the

4   Advisor Fee Almanac's "average" fee quantifies only investment advisory services.  *Id*. ¶ 20

5   ("The Fee Benchmarker (Advisor Fee Almanac, 6th Edition, 2017) has established the average

6   Investment Advisory Fee of $107,250 per year").  There is no mention—much less a

7   calculation—of the cost of investment management services.  In short, Plaintiff pits the "average"

8   fee for investment advice alone against the fees he alleges were paid to Greenleaf for both

9   investment advisory *and investment management* services.  This is an inappropriate apples-to-

10  oranges comparison that does not support a claim of fiduciary imprudence.  *E.g.*, *Wehner I*, 2021

11  WL 507599, at *5 (observing the plaintiff's source for the alleged "average" fee did not account

12  for the same services provided to the plan at issue); *see also Matousek*, 51 F.4th at 279

13  (dismissing claim that failed to allege a "like-for-like comparison").

14     The Court should dismiss Plaintiff's claim premised on the unadorned contention that

15  Greenleaf earned "excessive" compensation from the Plan.[17]

16  **C.      PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY
            OF LOYALTY**

17

18     Count II, Plaintiff's separate claim for breach of ERISA's duty of loyalty, should be

19  dismissed because it "fail[s] to differentiate between the alleged breaches of prudence and []

20  loyalty."  *Wehner II*, 2021 WL 2417098, at *10; *see also White II*, 2017 WL 2352137, at *6

21  (ERISA "distinguishes the duty of loyalty from the duty of prudence.").  To state a plausible

22  disloyalty claim, Plaintiff must allege facts separate and independent from those underlying his

23  imprudence claim.  *Tobias*, 2021 WL 4148706, at *16 (loyalty claims may not "hinge entirely"

24  on breach of prudence allegations).  Such facts must "raise a plausible inference that defendants

25  had engaged in self-dealing," acted to benefit "themselves or a thirty-party" at plan participants'

26

---

27  [17] To the extent Plaintiff asserts a co-fiduciary breach claim pursuant to 29 U.S.C. § 1105(a),
    FAC ¶¶ 397-98, it is derivative of his underlying imprudence claims and likewise fails as a matter

28  of law.  *Raya v. Barka*, No. 19-CV-2295-WQH-AHG, 2020 WL 3469374, at *7 (S.D. Cal. June
    25, 2020) ("A plaintiff cannot state a claim for co-fiduciary liability without first stating a claim
    for breach of fiduciary duty under ERISA.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22-CV-09192-AMO

expense or acted under a "conflict of interest." *White II*, 2017 WL 2352137, at *6; *see also Beldock I*, 2023 WL 1798171, at *7 (similar).

Plaintiff has merely dressed up his imprudence claim with conclusory allegations of disloyalty. FAC ¶¶ 92, 119, 136, 166, 169, 174, 236, 243, 260, 312. He parrots his prudence allegations regarding "investment funds that were more expensive that necessary" and alleges in conclusory fashion that Defendants made these choices due to unspecified "conflicts of interest." FAC ¶ 410. The FAC lacks any factual allegations that Defendants had any conflict of interest, made decisions to benefit themselves at the expense of Plan participants, or engaged in self-dealing. This claim should be dismissed. *See e.g.*, *White II*, 2017 WL 2352137, at *23 (dismissing disloyalty claim where the plaintiffs alleged no facts that "defendants took any actions for the purpose of benefitting themselves or some third party [] at the expense of Plan participants, or that they acted under any actual or perceived conflict of interest"); *In re LinkedIn*, 2021 WL 5331448, at *11 (same where "there are no facts in the complaint" that defendants acted to benefit others at the detriment of plan participants, "aside from the fact that the plan" included the challenged investments); *Wehner II*, 2021 WL 2417098, at *11 (same where loyalty allegations were "entirely speculative, and unsupported by any facts") (citation omitted).

### D.   PLAINTIFF'S DERIVATIVE DUTY TO MONITOR CLAIM FAILS

Plaintiff's "failure to monitor" claim, Count III, likewise fails as a matter of law because it is "derivative" of his primary fiduciary breach claims. *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018) (dismissing failure to monitor claim); *Patterson*, 2018 WL 748104, at *6 (dismissing monitoring claim because "none of Plaintiff's other causes of action states a claim"); *Beldock I*, 2023 WL 1798171, at *8 (same). Because his underlying fiduciary breach claims fail, his "tag-along" monitoring claim falls with them. *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 856 (S.D. Ohio 2009).

### E.   PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A CLAIM FOR BREACH OF FIDUCIARY DUTY BY OMISSION

Count IV, Plaintiff's claim for "breach of fiduciary duty by omission," likewise fails.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22−CV−09192−AMO

1    Plaintiff accuses Defendants of failing to take "legal action" to correct unidentified "prohibited

2    transactions in violation of ERISA."  FAC ¶¶ 429-35.  This claim is comprised only of

3    unsupported legal conclusions.  The FAC does not allege any *facts* regarding what transactions

4    occurred or why they were prohibited transactions under ERISA, let alone how Defendants could

5    have or should have "corrected" them.  Such conclusory allegations fail as a matter of law.  *See,*

6    *e.g.*, *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012) (a court is not required to

7    accept as true legal conclusions or "formulaic recitation[s] of the elements of a cause of action.")

8    (citation omitted); *Akhlaghi v. Cigna Corp.*, No. 19-cv-03754-JST, 2019 WL 13067381, at *4

9    (N.D. Cal. Oct. 23, 2019) ("[b]y failing to identify which particular fiduciary duty [defendants]

10   allegedly breached," plaintiffs fail to "plead facts sufficient to give the defendants fair notice" of

11   their claim) (quotations and citation omitted).

12   **V.     CONCLUSION**

13          For these reasons, this Court should dismiss Plaintiff's FAC in its entirety with prejudice.

14

15   Dated: May 26, 2023                              Respectfully Submitted,

16                                                    MORGAN, LEWIS & BOCKIUS LLP

17                                                    By: /s/ *Jeremy P. Blumenfeld*

18                                                    Maureen Beckley
                                                      Gurinder S. Grewal
19                                                    Jeremy P. Blumenfeld (*pro hac vice*)
                                                      Abbey M. Glenn
20                                                    Allison S. Egan (*pro hac vice*)

21                                                    Attorneys for Defendants Schenker, Inc. and
                                                      Administrative Committee of Schenker, Inc.
22                                                    401(k) Savings and Investment Plan

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

25

DEFENDANTS' MOTION TO DISMISS
FAC AND MEMORANDUM OF P&A
CASE NO.  4:22–CV–09192–AMO