UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEGA PARTIDA,<br><br>    Plaintiff,<br><br>    v.<br><br>SCHENKER INC., et al.,<br><br>    Defendants. | Case No. 22-cv-09192-AMO<br><br>**ORDER DENYING MOTION TO TRANSFER AND GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 24, 39 |

Defendants' motion to transfer venue and motion to dismiss were heard before this Court on October 26, 2023. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **DENIES** the motion to transfer and **GRANTS** the motion to dismiss for the following reasons.

**I.    BACKGROUND**[1]

Plaintiff Diego Partida is a California resident and former employee of Defendant Schenker, Inc. ("Schenker") who participates in Schenker's 401(k) Savings and Investment Plan (the "Plan"). First Amended Complaint ("FAC") (ECF 32) ¶¶ 1, 9. Schenker sponsors and administers the "defined contribution" retirement plan, which enables participants to select their own investments from the plan investment options chosen by the plan sponsor. FAC ¶¶ 14, 61,

---

[1] In considering the motion to transfer, the Court may consider evidence outside of the pleadings, but it "draw[s] all reasonable inferences and resolve[s] factual conflicts in favor of the non-moving party." *Hamer v. JP Morgan Chase Long-Term Disability Benefit Plan*, No. 22-CV-06886-LB, 2023 WL 4053801, at *5 (N.D. Cal. June 16, 2023) (citation omitted). In considering the motion to dismiss, the Court accepts Partida's allegations in the complaint as true and construes the pleadings in the light most favorable to Partida. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

1  85. Schenker maintains its principal place of business in Chesapeake, Virginia. FAC ¶ 14.

2  The Schenker, Inc. Retirement Plans Committee ("Committee") is responsible for
3  overseeing the Plan's investment options and expenses. DeGalleford Decl. (ECF 24-1) ¶ 8. The
4  Committee is comprised of thirteen members, employed at Schenker's locations in Virginia,
5  Florida, New York, and Illinois. *Id.* Since 2016, the Committee has held meetings in Virginia,
6  Florida, and New York. *Id.* ¶ 9. Schenker's Human Resources personnel who engage in
7  administrative activity on behalf of the Plan are employed at Schenker's headquarters in
8  Chesapeake, Virginia. *Id.* ¶ 3. As of December 31, 2022, the Plan covers 9,694 participants in 46
9  states, 7.59% of whom live in California. *Id.* ¶ 4.

10  On December 30, 2022, Plaintiff Diego Partida filed a putative class action under the
11  Employee Retirement Income Security Act of 1974 ("ERISA") against Schenker, The
12  Administrative Committee of Schenker, Inc. 401(K) Savings and Investment Plan ("Committee"),
13  and DOES 1-50 (collectively, "Defendants"). ECF 1. Partida filed the First Amended Complaint
14  ("FAC") on May 1, 2023 on behalf of current and former employees, participants, and
15  beneficiaries of the Plan to recover losses for Defendants' mismanagement of the Plan. FAC ¶ 2.
16  Partida alleges that Defendants failed to employ a prudent process for selecting and monitoring
17  funds, which had significantly higher expense-ratios and underperformed in comparison with
18  then-available benchmarks. FAC ¶¶ 33, 158-168, 170-171, 175, 236-38, 241.

19  On March 3, 2023, Defendants filed a motion to transfer venue to the Eastern District of
20  Virginia. ECF 24. On May 26, 2023, Defendants moved to dismiss the FAC for lack of standing
21  and failure to state a claim. ECF 39. The Court first considers the motion to transfer before
22  turning to the motion to dismiss.

23  **II.  MOTION TO TRANSFER**

24  Defendants move to transfer the case to the Eastern District of Virginia. ECF 24. A court
25  may transfer an action to another district "where it might have been brought" "[f]or the
26  convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see also*
27  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal citation and quotation
28  marks omitted) ("[S]ection 1404(a) requires two findings—that the district court is one where the

2

1    action might have been brought and that the convenience of parties and witnesses in the interest of
2    justice favor transfer.").

3          A motion for transfer lies within the broad discretion of the district court and must be
4    determined on an individualized basis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th
5    Cir. 2000). "Section 1404(a) requires the court to make a threshold determination of whether the
6    case could have been brought where the transfer is sought. If venue is appropriate in the
7    alternative venue, the court must weigh the convenience of the parties, the convenience of the
8    witnesses, and the interest of justice." *State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1059
9    (N.D. Cal. 2018) ("*Bureau of Land Mgmt.*") (citing 28 U.S.C. § 1404(a)).

10         In considering whether to transfer venue, courts consider several factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99. Also relevant are "the presence of a forum selection clause" and "the relevant public policy of the forum state." *Id.* at 499; *see also Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) (the court may also consider local interest in the controversy and the relative court congestion in each forum).

      The party seeking to transfer bears the burden of showing that "the balance of convenience clearly favors transfer." *Lax*, 65 F. Supp. 3d at 776 (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted).

///

### A. Section 1404(A) Factors

Under 28 U.S.C. § 1404(a), the Court must first determine whether the case could have been brought in the district where transfer is sought, i.e., where venue is proper, before assessing the convenience of parties and witnesses and the interest of justice. 28 U.S.C. § 1404(a); *see Bureau of Land Mgmt.*, 286 F. Supp. 3d at 1059. Partida does not dispute that this action could have been brought in the Eastern District of Virginia, and thus concedes the issue. *See Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence."). The Court therefore turns directly to the case-specific analysis of convenience and fairness. Because most of the *Jones* factors do not weigh in favor of transfer, the Court ultimately finds transfer not appropriate under the facts and circumstances of this case.

#### 1. Plaintiff's Choice of Forum

"Although it is not a statutory requirement, the Supreme Court has placed a strong emphasis on the plaintiff's choice of forum." *Bureau of Land Mgmt.*, 286 F. Supp. 3d at 1063; *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum"); *see also Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (noting the "strong presumption in favor of a domestic plaintiff's forum choice"); *Ctr. For Biological Diversity v. McCarthy*, No. 14-cv-05138-WHO, 2015 WL 1535594, at *3 (N.D. Cal. Apr. 6, 2015) ("a plaintiff's choice of forum receives substantial deference, especially when the forum is within the plaintiff's home district or state") (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("*Belzberg*")).

Despite the "great weight [] generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Belzberg*, 834 F.2d at 739 (citations omitted). Moreover, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Id.*; *see Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *6 (N.D. Cal. Feb. 3, 2017) ("deference is

4

substantially diminished in several circumstances, including where . . . the conduct giving rise to the claims occurred in a different forum [or where] . . . the plaintiff sues on behalf of a putative class").

Here, though Partida filed the case in the district in which resides, his choice of forum is afforded less weight because he brings a putative class action challenging the Plan's administration, which occurred in Schenker's corporate headquarters in Chesapeake, Virginia. DeGalleford Decl. ¶¶ 1, 3, 5. Thus, this factor weighs against transfer, but is entitled to only minimal consideration.[2] *See Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-CV-05596-JST, 2015 WL 1738269, at *3 (N.D. Cal. Apr. 9, 2015) (affording plaintiff's choice of forum less weight in class action where plaintiff filed suit in the district where he resides); *see also Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014) (reducing deference given to plaintiff's choice of forum in putative class action where plaintiff did not reside in the district and the majority of the activities alleged in the complaint did not occur in the district).

### 2. Familiarity with Relevant Law and Ease of Access to Evidence

As ERISA is a federal statute that is uniform across the United States, neither forum has more familiarity with the relevant law. *See Reyes*, 2015 WL 1738269, at *4. Similarly, the ease of access to evidence does not weigh heavily in either direction. Defendants argue that witnesses are not in California, and hard copy and electronic records are stored in Virginia. DeGalleford Decl. ¶¶ 3, 8-9. However, Defendants bear the burden of showing why transfer is warranted, *see Commodity Futures*, 611 F.2d at 279, and have not indicated that it will be difficult to access records or evidence merely by virtue of it being stored in Virginia.

### 3. Convenience to Parties

"The convenience of the witnesses, particularly non-party witnesses, is often the most

---

[2] Defendants argue that Partida's choice of forum is entitled less deference because only 7% of the putative class members are located in California. ECF 24 at 10. However, as Defendants do not indicate how many plan participants live in Virginia, the Court does not find this argument persuasive.

1  important factor" in ruling on a motion to transfer venue under § 1404(a). *Grossman v. Johnson*
2  *& Johnson*, No. 14-CV-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) (citing
3  *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002)). The
4  "[c]onvenience of a litigant's employee witnesses is entitled to little weight because they can be
5  compelled by their employers to testify regardless of venue." *Brown*, 2014 WL 715082, at *4
6  (citing cases).

7  To evaluate this factor, "courts must consider not only the number of witnesses, but also
8  the nature and quality of their testimony." *United States ex rel. Tutanes-Luster v. Broker Sols.,*
9  *Inc.*, No. 17-CV-04384-JST, 2019 WL 1024962, at *5 (N.D. Cal. Mar. 4, 2019) (quoting *Metz v.*
10 *U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009)). "[T]he moving party must name
11 the witnesses, state their location, and explain their testimony and its relevance." *Hendricks v.*
12 *StarKist Co.*, No. 13-CV-729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) (quoting
13 *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).

14 Defendants argue that nearly all potential witnesses are located in Virginia or other East
15 Coast states. DeGalleford Decl. ¶¶ 3, 8. However, the Court affords less weight to these factors
16 as Schenker currently employs these witnesses. *See Brown*, 2014 WL 715082, at *4-5.[3] Thus,
17 Defendants have not made a strong showing of inconvenience.

18 **4. Public Policy Considerations**

19 The Court also considers "private and public interest factors affecting the convenience of
20 the forum." *Decker Coal Co.*, 805 F.2d at 843. Such factors include court congestion and the
21 relative cost of obtaining witnesses. *Ravelo Monegro*, 211 F.3d at 512; *see Gates Learjet Corp. v.*
22 *Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will
23 reduce a court's congestion but whether a trial may be speedier in another court because of its less

---

[3] Further, while Defendants identified potential witnesses, they failed to outline the substance or relevance of their testimony. *See Woolfson v. Conn Appliances, Inc.*, No. 21-CV-07833-MMC, 2022 WL 3139522, at *7 (N.D. Cal. Aug. 5, 2022) (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001)) ("as to the convenience of the witnesses, defendants have not met their burden to 'identify relevant witnesses, state their location[,] and describe their testimony and its relevance'").

6

crowded docket."). Defendants argue that public policy considerations warrant transfer.

Defendants contend that the relative speed of adjudicating civil cases through trial takes substantially longer in the Northern District of California (34.7 months) compared to the Eastern District of Virginia (18.1 months). ECF 24 at 15 (citing United States Courts, U.S. District Court–Judicial Caseload Profile for the Northern District of California and Eastern District of California, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf). Partida does not dispute the relative speed of trial of the different districts.

Defendants also argue that litigation costs will be reduced in Virginia because the Schenker personnel who administer the Plan are in Virginia or on the East Coast. ECF 24 at 13-14 (citing DeGalleford Decl. ¶¶ 3, 8). Partida contends that Defendants do not offer evidence of the difference in litigation costs and merely repeat arguments about the convenience of witnesses. ECF 28 at 14. However, "[g]enerally, litigation costs are reduced when venue is located near the most witnesses expected to testify." *Burgess*, 2017 WL 467845, at *9. Defendants also argue that Virginia, the state where the Plan is administered and where Schenker is headquartered, has a strong interest in resolving the action, whereas California has little interest in keeping the action. ECF 24 at 14; *see Burgess*, 2017 WL 467845 at *12 ("Unless there is a particular local interest, the district where the 'crux' of the case lies is the preferred district"). *But see Lax*, 65 F. Supp. 3d at 781 (finding no significant local interest in resolving the nationwide claims at issue). While Partida distinguishes one case Defendants cite from this one, he does not otherwise contest that Virginia has an interest in resolving the action. ECF 28 at 16. As litigation costs may be reduced in Virginia and California does not have a strong interest in resolving the action, these factors weigh slightly in favor of transfer.

**B. Balancing of Discretionary Factors**

Partida's choice of forum, as always, weighs against transfer, although this factor is entitled to less deference because the operative facts occurred outside of California and Partida seeks to represent a nationwide class. The remaining factors are neutral or are not weighed heavily. Defendants have not carried their burden of showing that the balance of convenience clearly favors transfer. Accordingly, the Court concludes that transfer is not appropriate here.

**III.    MOTION TO DISMISS**

Defendants move to dismiss the first amended complaint, arguing that Partida does not have standing to challenge investment funds in which he did not invest, and that Partida fails to state a claim in the causes of action for breach of fiduciary duty of prudence, breach of loyalty, failure to monitor, and breach of fiduciary duty by omission.  ECF 39 (Motion) at 17-34.  The Court first addresses standing, as it is a threshold question.

**A.    Standing**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) attacks a federal court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citations omitted).  To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).  Plaintiffs invoking federal jurisdiction bear the burden of establishing the existence of Article III standing and, at the pleading stage, "must clearly [ ] allege facts demonstrating each element." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and citation omitted).

The named plaintiffs in a putative class action "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (quoting *Spokeo*, 578 U.S. at 338 n.6).  "[I]n order to claim the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020) (internal quotations and citation omitted).  However, any dissimilarities between class representatives and putative class members are considered at the class-certification stage rather

than as part of a standing inquiry. *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015).

Defendants contend that Partida lacks standing to assert a claim that Defendants breached their fiduciary duties by failing to monitor funds in which Partida did not invest. Motion at 17. However, in a defined contribution plan, as here, FAC ¶ 85, a plaintiff can show Article III standing by pleading injury to their own plan account. *See In re Sutter Health ERISA Litig.*, No. 1:20-CV-01007-JLT, 2023 WL 1868865, at *5 (E.D. Cal. Feb. 9, 2023) ("plaintiffs bringing claims regarding underperforming funds can demonstrate the requisite injury where they either (i) invested in at least one of the challenged funds or (ii) challenge a 'plan-wide' decision-making process that injures all plan participants"); *In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704-EJD, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) ("Since *Thole*, [140 S. Ct. 1615 (2020),] district courts across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in, and that allegations of investment in a specific fund is not a prerequisite for standing to challenge plan-wide mismanagement so long as a plaintiff can plead injury to their own plan account.") (citing cases).

Partida alleges that Defendants' actions harmed his plan account. Partida invested in one of the Plan funds and alleges that Defendants' actions caused financial harm and "deprived [him] of the opportunity to grow [his] retirement savings by investing in prudent options with reasonable fees." FAC ¶¶ 25, 27, 298, 443. Further, Defendants do not challenge Partida's individual standing to bring a breach of duty of prudence claim for selecting the Janus fund to replace the Oakmark fund, offering plan investment options in "higher cost" share classes, or for excessive investment advisor fees affecting all plan participants. Thus, Partida's individual standing to bring an ERISA claim for breach of prudence under at least three theories is uncontested. Under *Melendres*, the inquiry ends there. 784 F.3d at 1261-62; *see Cevasco on behalf of Allegiant 401(k) Ret. Plan v. Allegiant Travel Co.*, No. 222-CV-01741-JADDJA, 2023 WL 6464867, at *3-5 (D. Nev. Oct. 4, 2023) (plaintiff had individual standing where he did not invest in challenged funds where defendant did not challenge plaintiff's individual standing to bring a claim for excessive recordkeeping fees affecting all plan participants). Thus, Partida has a "direct and substantial

interest" in the breach of duty of prudence claim. *See Melendres*, 784 F.3d at 1262 (citation omitted).

The Court agrees with other district courts in this Circuit that have found standing in accordance with *Melendres* under similar circumstances. *See Tobias v. NVIDIA Corp.*, No. 20-CV-06081-LHK, 2021 WL 4148706, at *7 (N.D. Cal. Sept. 13, 2021) (citing cases); *see, e.g.*, *Bouvy v. Analog Devices, Inc.*, No. 19-CV-881 DMS (BLM), 2020 WL 3448385, at *7 (S.D. Cal. June 24, 2020) (finding that plaintiff had standing to bring claims even though he had not invested in every mutual fund challenged in the putative class claims). Whether Partida will ultimately be allowed to present claims on behalf of others who do not have identical interests is not a question of standing and will depend on "an assessment of typicality and adequacy of representation" that the Court does not determine at this stage. *Melendres*, 784 F.3d at 1262 (citation omitted).

## B. Failure to State a Claim

Defendants also move to dismiss Partida's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[4] Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, the factual allegations in the plaintiff's complaint "'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century*

---

[4] Defendants seek judicial notice of the amended complaint in *White v. Chevron Corp.*, et al., Dkt. 41, No. 4:16- cv-00973-PJH (N.D. Cal. Sept. 20, 2016) and an ERISA plan participant fee disclosure dated May 8, 2021, which was issued to participants in the plan. ECF 40. Partida does not object. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court takes judicial notice as of the amended complaint in *White* as it is publicly available on the Court's docket. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). The Court also takes judicial notice of the ERISA participant fee disclosure. *See, e.g.*, *In re LinkedIn*, 2021 WL 5331448, at *5 (taking judicial notice of participant disclosures and communications); *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 507599, at *3 (N.D. Cal. Feb. 9, 2021) (taking judicial notice of plan-related documents).

*Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (alterations in original)). In ruling on the motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.

"[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121 (9th Cir. 2008)). "[T]he non-conclusory 'factual content' and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Defendants move to dismiss the four causes of action for failure to state a claim: (1) breach of fiduciary duty and prudence; (2) breach of duty of loyalty; (3) failure to monitor other plan fiduciaries; and (4) breach of fiduciary duty by omission. The Court addresses each claim in the order they were pled.

### 1. Duty of Prudence (Claim One)

"ERISA plan fiduciaries must discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.' " *Hughes v. Nw. Univ.*, 595 U.S. 170, 172 (2022) (citing 29 U.S.C. § 1104(a)(1)(B)); *see Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1147 (N.D. Cal. 2022). Under this standard, the Court must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983). This duty extends not only to the initial selection of investments, but also to the continuous monitoring of investments, and requires that imprudent investments be removed. *See Tibble v. Edison Int'l*, 575 U.S. 523, 528-30 (2015). When analyzing prudence, the Court's

focus is on the fiduciary's "conduct in arriving at a decision, not on its results." *Anderson*, 579 F. Supp. 3d at 1147 (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2d Cir. 2013)). Thus, "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation . . . . ERISA requires a plaintiff to plead some other indicia of imprudence." *Id.* (citation omitted).

Partida asserts that Defendants violated the duty of prudence by:

> (1) not investigating nor considering the availability [of] lower-fee and equally (if not better) performing share classes of identical funds; (2) not investigating nor evaluating the performance of underperforming investments against meaningful benchmarks, and then not removing them when they continued to underperform; (3) not evaluating whether an active management strategy benefitted participants; and (4) misrepresenting material information about Plan options and expenses to participants.

Opposition (ECF 45) at 12.

Despite his assertions to the contrary, Partida ultimately attacks the funds' underperformance, and fails to plead any facts showing how the process in selecting the investments or monitoring the funds was flawed. For example, Partida alleges that the funds "significantly underperformed their meaningful benchmarks" and that Defendants "selected and retained investment options in the Plan despite the high cost of the funds in relation to other comparable investments." FAC ¶¶ 379, 391. First, "[t]here is nothing presumptively imprudent about a retirement plan retaining investments through periods of underperformance as part of a long-range investment strategy." *Wehner*, 2021 WL 507599, at *9 (citations omitted). Moreover, without factual allegations about the allegedly flawed process for selecting the plans, allegations that a fund "underperformed" are insufficient for a duty of prudence claim. That is, the mere availability of cheaper alternatives does not establish a breach of the duty of prudence. *See, e.g.*, *Tobias*, 2021 WL 4148706, at *11 ("Plaintiffs' allegations regarding the availability of lower cost share classes are, without more, insufficient to state a claim for breach of the duty of imprudence.").

Although Partida alleges that other funds performed better, he has not provided any factual

12

1  allegations showing that those other funds had the same aims, risks, or potential rewards such that
2  they could be considered meaningful benchmarks.  *See Anderson*, 579 F. Supp. 3d at 1148 (citing
3  cases); *cf. Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *1 (9th Cir. Apr. 8,
4  2022) ("Plaintiffs identify two lower-cost JPMorgan share classes (R5 and R6) that they allege
5  were available substitutes for nine JPMorgan SmartRetirement mutual funds offered by the plan
6  during the class period.  As to those nine JPMorgan funds, plaintiffs allege that 'the more
7  expensive share classes chosen by Defendants were the same in every respect other than price [as]
8  their less expensive counterparts.'  Accepted as true, plaintiffs' allegations plausibly suggest that
9  defendants acted imprudently by failing to switch to the lower-cost alternatives.").  Further, the
10 benchmarks Partida selected were passively managed market indexes, *see* FAC ¶¶ 137, 163-64,
11 207, 325-26, 330, which are not meaningful benchmarks to the actively managed funds at issue
12 here.  *See Davis*, 2022 WL 1055557, at *2 n.1 ("plaintiffs have not plausibly alleged that
13 defendants breached the duty of prudence by failing to adequately consider passively managed
14 mutual fund alternatives to the actively managed funds offered by the plan").

15 Partida also alleges that the recordkeeping and investment fees were excessive "relative to
16 the services actually provided to the plan."  Response at 16; *see* FAC ¶¶ 19-20.  However, Partida
17 fails to plead facts alleging "how [the fees] were excessive."  *See White v. Chevron Corp.* ("*White*
18 *II*"), No. 16-CV-0793-PJH, 2017 WL 2352137, at *18 (N.D. Cal. May 31, 2017).  Moreover,
19 Partida has not alleged what services the provider, Greenleaf, provided beyond "Investment
20 Advice," FAC ¶ 19, much less has Partida alleged that the service provider fees were excessive "in
21 relation to the specific services [] provided to the specific plan at issue."  *Whener*, 2021 WL
22 507599, at *5.

23 Finally, Partida argues that Defendants misrepresented material information about the Plan
24 options and expenses.  Opposition at 18.  However, he has not alleged what the misrepresentations
25 were or how he detrimentally relied on any misrepresentations.  *See Baker v. Save Mart*
26 *Supermarkets*, No. 22-CV-04645-WHO, 2023 WL 2838109, at *3 (N.D. Cal. Apr. 7, 2023)
27 (plaintiff must show "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a
28 misrepresentation by the defendant; (3) the materiality of that misrepresentation; and (4)

detrimental reliance by the plaintiff on the misrepresentation"). Partida has failed to provide factual allegations to state a claim for breach of the fiduciary duty of prudence and the Court dismisses the claim with leave to amend.

### 2. Duty of Loyalty (Claim Two)

ERISA requires that plan fiduciaries act "solely in the interest of the participants and beneficiaries," and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1); *see Pegram v. Herdrich*, 530 U.S. 211, 235 (2000); *Anderson*, 579 F. Supp. 3d at 1155-56. A claim for breach of duty of loyalty requires allegations showing that the "Plan's fiduciaries subjectively intended to benefit themselves or a third party at the expense of the Plan's participants." *Wehner*, 2021 WL 507599, at *10. A plaintiff must allege that fiduciaries made decisions "because of self-dealing." *Anderson*, 579 F. Supp. 3d at 1156.

The FAC includes only conclusory allegations that the Plan fiduciaries acted "in their own self interest" and that "[a]s a result of their conflicts of interest, Plan Fiduciaries selected and retained in the Plan many investment funds that were more expensive than necessary and otherwise were not justified on the basis of their managers and historical performance." FAC ¶¶ 409-410. This is insufficient. *See e.g.*, *White II*, 2017 WL 2352137, at *23 (dismissing breach of loyalty claim where plaintiffs alleged no facts that "defendants took any actions for the purpose of benefitting themselves or some third party [] at the expense of Plan participants, or that they acted under any actual or perceived conflict of interest"); *In re LinkedIn*, 2021 WL 5331448, at *11 (same where "there are no facts in the complaint" that defendants acted to benefit others at the detriment of plan participants, "aside from the fact that the plan" included the challenged investment options). The claim fails on this basis.

As an additional reason to dismiss this claim, Partida fails to differentiate the breach of loyalty claim from the breach of prudence claim. *See Wehner*, 2021 WL 507599, at *10 (dismissing breach of loyalty claim for failing to differentiate between breach of prudence and breach of loyalty claims) (citing cases). In opposing the motion to dismiss, Partida merely asserts that the claims "rest on different facts," but cites nothing in the FAC in support of that contention. Opposition at 19. The Court therefore dismisses this claim with leave to amend.

### 3. Failure to Monitor (Claim Three)

A failure to monitor claim is only viable when there is an underlying claim for breach of fiduciary duty. *See Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *7 (N.D. Cal. Oct. 5, 2020) (dismissing failure to monitor claim as derivative of insufficiently pleaded breach of fiduciary claim); *Dorman v. Charles Schwab Corp.*, No. 17-CV-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018) (same). As the underlying claims fail here, the failure to monitor claim must also be dismissed with leave to amend. *See Tobias*, 2021 WL 4148706, at *16 ("Plaintiffs' failure to monitor claim necessarily fails because Plaintiffs have failed to state an underlying ERISA violation. As such, Plaintiffs have failed to state a claim for failure to monitor.").

### 4. Breach of Fiduciary Duty by Omission (Claim Four)

Partida's claim for breach of fiduciary duty by omission likewise fails. Partida alleges that Defendants failed to take "legal action" to correct unidentified "prohibited transactions in violation of ERISA" and engaged in such prohibited transactions. FAC ¶¶ 429-35. Such conclusory allegations are insufficient to state a claim. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (a court is not required to accept as true legal conclusions or "formulaic recitation[s] of the elements of a cause of action") (quoting *Twombly*, 550 U.S. at 555). Accordingly, the Court dismisses the breach of fiduciary by omission claim with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to transfer venue and **DISMISSES** the first amended complaint with leave to amend. Any amended complaint must be

///
///
///
///
///
///
///

15

filed by **April 30, 2024**. No additional parties or claims may be added without leave of Court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: March 29, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Court**